**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| MARY SPEEGLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 5:05-CV-2460-IPJ |
| ) | |
| LOPAREX, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Pending before the court is the summary judgment motion of defendant Loparex, Inc. ("Loparex") (doc. 37). The motion was filed with a supporting brief (doc. 42) and evidentiary materials (docs. 40, 41). The plaintiff, Mary Speegle, filed a brief in opposition to Loparex's motion for summary judgment (doc.48) and evidentiary materials (doc. 47) to which Loparex filed a reply (doc. 51). Loparex also filed a motion to strike the affidavit of Gerald Miller (doc. 49). Speegle sued Loparex alleging that she was subjected to sexual harassment by coworkers and supervisors in violation of Title VII of the Civil Rights Act of 1964 and alleging various state law claims.

**I. Title VII Claims and EEOC Filing Period**

**A. Introduction**

Loparex claims that it is entitled to summary judgment on Speegle's Title VII claim because Speegle failed to file a charge with the Equal Employment Opportunity

1

Commission (EEOC) within the required time.[1]  In order to litigate a claim under Title VII, a plaintiff must first exhaust administrative remedies, beginning with the filing of a charge of discrimination with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). The plaintiff must file an employment discrimination charge with the EEOC within 180 days after the date of the alleged discrimination.  29 C.F.R. § 1626.7(a).  The failure to file a timely charge of discrimination with the EEOC results in a bar of the claims contained in an untimely charge. *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000). Speegle stopped working at Loparex on December 10, 2004, after a conflict with her supervisor, Max Farley, occurred.  Speegle Dep. at 262-271.  Speegle did not file a charge of discrimination with the EEOC within 180 days from December 10, 2004. Pl's. Ex. A. Speegle alleges in her complaint that she is entitled to "equitable tolling" of the statutory charge-filing prerequisite because her alleged "mental incapacitation" prevented her timely filing the EEOC charge.  Compl. at ¶ 43.

The parties dispute whether, under the facts of this case, the issue of equitable tolling should be resolved by the court, rather than the jury.  The 180-day period for filing an EEOC charge is subject to modification "'until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Cocke v. Merrill Lynch & Co.*, 817 F.2d

---

[1] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

1559, 1561 (11th Cir. 1987) (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir. 1975)). The Eleventh Circuit Court of Appeals has held that, when there is a disputed issue of fact with regard to whether a plaintiff was aware or should have been aware of the facts giving rise to a claim of discrimination, the issue of equitable tolling is an issue for the jury. *See Cocke,* 817 F.2d at 1561 (holding that "while an employer is actively trying to find a position within the company for the employee" that the 180 day filing period is "equitably tolled until such time as it is or should be apparent to an employee with a reasonably prudent regard for his rights that the employer has ceased to actively pursue such a position"); *Sturniolo v. Sheaffer, Eastin, Inc.*, 15 F.3d 1023, 1026 (11th Cir. 1994) (holding that summary judgment on an Age Discrimination claim was inappropriate when the plaintiff learned two months after termination that he had been replaced by a younger individual, though he was previously told that his position had been eliminated); and *Pearson v. Macon-Bibb County Hosp. Auth.*, 952 F.2d 1274, 1280 (11th Cir. 1992). However, Speegle does not contend that she was unaware of the facts which support her claims for sexual harassment, and the evidence does not show that she was unaware of those facts. Rather, Speegle argues that the doctrine of equitable tolling should be applied because her mental incapacitation prevented the timely filing of the EEOC charge. Therefore, the court agrees with Loparex that, under the facts of this case, the issue of equitable tolling is a matter to be decided by the court, rather than a jury. *See Arce v. Garcia*, 434 F.3d 1254, 1264 (11th Cir. 2006) (affirming the district court's decision that the issue of equitable tolling was to be resolved by the

court rather than the jury); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1153, 1155 (11th Cir. 2003) (holding that "[t]he question of whether equitable tolling applies is a legal one" and affirming the district court's finding that the statute of limitations was equitably tolled); *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1531-32 (11th Cir. 1992) (holding that "[t]he question of whether or not equitable tolling applies is a legal one" and holding that "the trial court made findings of facts that support the determination that the limitation period was equitably tolled.").

### B. Factual Background: the Statutory Charge Filing Period

Speegle relies upon her medical history and the testimony of her physician to meet her burden of showing that mental incapacitation prevented her from timely filing a charge of discrimination with the EEOC[2]:

On December 13, 2004, Speegle's husband took her to Dr. David Crowder's office. Speegle Dep. at 299; Crowder Dep. at 48. Speegle reported that she was despondent over her "malignant workplace" and "rampant sexually oriented harassment" by coworkers. Crowder Dep. at 49. Crowder testified that, unlike his previous encounters with Speegle, she expressed thoughts of self-harm. Crowder Dep. at 48. Dr. Crowder considered Speegle's situation to be a psychiatric emergency and he referred her for admission to the hospital. *Id.* at 49. Speegle was admitted to a psychiatric hospital, and she presented to the hospital with complaints of depression and suicidal ideation. Speegle Dep. at 299-300, Def.'s Ex. 27 to Speegle

---

[2]Under the doctrine of equitable tolling, the plaintiff bears the burden of showing that a statute of limitations should be tolled. *Arce*, 434 F.3d at 1261.

Dep. When Speegle was admitted to the hospital, she reported that she was "stressed out at 'work' due to continued harassment by her supervisor at her workplace." Def's Ex. 27 to Speegle Dep. Speegle was discharged from the hospital the next day, and she was referred to a psychiatrist, Deborah S. Gordon, M.D., for outpatient treatment. Gordon Dep. at 22, 39.

On December 16, 2004, Speegle began treatment with Dr. Gordon, and Speegle denied any suicidal ideation at that time. Gordon Dep. at 22; Def.'s Ex. 28 to Speegle Dep at p. 1. Dr. Gordon testified that, at this time, Speegle did not have the ability to act upon her legal rights because of her depression, suicidal thoughts and homicidal ideation just a few days prior. Gordon Dep. at 161-165. Dr. Gordon also testified that, at this time, Speegle did not have the ability to make responsible decisions regarding matters other than those concerning her health. *Id.* at 165. During the visit, Dr. Gordon also referred Speegle to Ludmilla Stevens, an outpatient clinician, for therapy. Def.'s Ex. 28 to Speegle Dep. at p. 2.

Speegle saw Dr. Gordon seven times from January through May 2005. Def.'s Ex. 1 to Gordon Dep. at pp. 2-7. During her deposition, Dr. Gordon testified that Speegle's current diagnosis was both major depression and post traumatic stress disorder (PTSD). Gordon Dep. at 148. Dr. Gordon originally diagnosed Speegle with major depression and she later added PTSD to her diagnosis. Gordon Dep. at 161-162; Def.'s Ex. 38 to Speegle Dep. Dr. Gordon assessed that Speegle's symptoms are related to Speegle's allegations regarding harassment at work. Gordon Dep. at 150. During her visits to Dr. Gordon, Speegle reported that she has

5

experienced nightmares, recurrent intrusive thoughts or memories, visual hallucinations, and symptoms of panic attacks. *Id.* at 156-159. Dr. Gordon testified that these symptoms are consistent with a person suffering from PTSD. *Id.* at 156. Dr. Gordon has assessed that since Speegle has been under her care, she has not been capable of gainful employment. *Id.* at 155. Dr. Gordon also testified that from December 2004 to June 2005 Speegle did have some periods of improvement, but that any periods of improvement were followed by another period of decompensation. *Id.* at 170-171.

On April 13, 2005, during a session of individual psychotherapy Speegle reported her supervisor's discrimination and sexually inappropriate behavior to Stevens. Speegle Dep. at 317-318. On July 15, 2005, Stevens wrote a letter to Suzanne Britton, Loparex's human resources manager, to explain that she and Dr. Gordon had changed Speegle's clinical diagnosis from "Major Depression" to "Post-Traumatic Stress Disorder."[3] Def.'s Ex. 38 to Speegle Dep. Stevens explained in the letter that Speegle developed symptoms of Post Traumatic Stress Disorder "as a result of working in the hostile environment and being subjected to what apparently sounds like humiliation." *Id.* Stevens also explained in the letter that she did not think Speegle should return to work because she would not be able to "cope with ongoing stress of arranging her daily schedule in such a manner that she would avoid

---

[3]The letter stated that Dr. Gordon and Stevens had "changed" her diagnosis from major depression to PTSD. Def.'s Ex. 38 to Speegle Dep. However, in her deposition, Stevens testified that Speegle's diagnosis includes both major depression and PTSD. Gordon Dep. at 148.

6

interaction with her former supervisor." *Id.*

On July 25, 2005, Dr. Gordon filled out an assessment of Speegle's condition in connection with Speegle's application for long-term disability benefits. Gordon Dep. at 166. Dr. Gordon noted that Speegle was severely limited in all activity due to her psychiatric illness. *Id.* at 167. Dr. Gordon assessed that she was experiencing decreased concentration, memory lapses, emotional lability, uncontrollable crying spells, flashback and hallucinations, and severe anxiety and panic attacks. *Id.* Dr. Gordon also noted that Speegle had an inability to function in almost all areas. *Id.* at 167-168. When asked whether Speegle had the ability to act upon her legal rights at this time, Dr. Gordon testified that she was not capable of responsibly making any complex decisions. *Id.* at 169-170.

### C. Analysis: Equitable Tolling

The Eleventh Circuit has not addressed whether and to what degree mental incapacitation is grounds for equitable tolling of the limitations period in a Title VII case. The Eleventh Circuit has explained the doctrine of equitable tolling as follows:

> The doctrine of equitable tolling allows a court to toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations to begin running on the plaintiff's claims. *See Justice v. United States*, 6 F.3d 1474, 1475 (11th Cir. 1993) ("The doctrine of equitable tolling abates the harsh operation of the statute of limitations under certain circumstances in which barring a plaintiff's potentially meritorious action would be unjust."). "Equitable tolling is appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (emphasis added). The plaintiff bears the burden of showing that such extraordinary circumstances exist. *Justice*, 6 F.3d at 1479. In determining whether a plaintiff meets this burden, we must keep in mind that "[equitable] tolling is an extraordinary remedy

which should be extended only sparingly." *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990)).

*Arce*, 434 F.3d at 1261. Therefore, the issue is whether the facts presented by the plaintiff demonstrate the "extraordinary circumstances" sufficient for equitable tolling to apply to the EEOC charge-filing limitations period.

The plaintiff contends that her medical history demonstrates that her mental incapacitation prevented her from filing her EEOC charge within the statutory filing period. Although Dr. Gordon testified that Speegle would have been unable to responsibly act upon her legal rights, Speegle was able to convey both to Dr. Gordon and Stevens the information regarding her work environment, and Dr. Gordon also testified that there was no reason that Speegle could not have conveyed the information regarding her work environment to an attorney. Gordon Dep. at 30. Further, Dr. Gordon assessed Speegle's "insight & judgment" as "adequate" and her memory and concentration as "good" on March 23 and April 26, 2005. Def.'s Ex. 1 to Gordon Dep. at p. 5-6. In addition, Speegle's own actions during the statutory charge-filing period contradict Dr. Gordon's opinion that Speegle was unable to pursue her legal rights. The evidence demonstrates that Speegle pursued other legal avenues during the EEOC filing period. Speegle pursued claims for disability benefits after her December 14, 2004, hospitalization. Def.'s Ex.s H and I. On December 28, 2004, Speegle received a letter from Britton stating that Speegle needed to have her doctor call the company that verifies its short term disability claims. Speegle Dep. at 303-304; Def.'s Ex. 29 to Speegle Dep. Speegle complied

with the request and had her doctor follow up with the company. Speegle Dep. at 304. Speegle also pursued her legal rights by pursuing a union grievance proceeding related to her harassment claims against Max Farley. Def.'s Ex.s 31 and 36 to Speegle Dep. On January 27, 2005, Speegle authorized union steward Claudia Landers to initiate the union grievance on her behalf. Speegle Dep. at 307-308; Def.'s Ex. 31 to Speegle Dep. The grievance alleges claims of harassment, but not sexual harassment, by Max Farley arising from the December 10, 2004, incident. Def.'s Ex. 31 to Speegle Dep. Speegle was able to relate to Landers the events of December 10, 2004, that led to her filing the grievance. Speegle Dep. at 311-312. The grievance states that Speegle delayed filing the grievance because she had been under a doctor's care, but "[s]he feels she is now ready to go ahead with the grievance procedure." Def.'s Ex. 31 to Speegle Dep. On March 23, 2005, Speegle saw Dr. Gordon, and Dr. Gordon noted that Speegle's "grievance hearing may be in a month" and Dr. Gordon did not advise Speegle that she should not proceed with the grievance procedure. Def.'s Ex. 1 to Gordon Dep. at p 5; Gordon Dep. at 26-28. On June 29, 2005, Speegle attended the grievance hearing regarding her January 27, 2005, grievance. Speegle Dep. at 321-322. She drove herself to the meeting and she submitted a detailed statement in response to the conclusions made in the first and second step of the grievance procedure. Speegle Dep. at 322, Def.'s Ex. 36 to Speegle Dep. The statement addressed events between her and her supervisor that occurred on December 10, 2004, her last day of employment. Def.'s Ex. 36 to Speegle Dep. Speegle also initially included in the statement that she had previously

reported that "sexual comments that have been made to me on the floor." *Id.* However, Speegle marked out this portion of the statement when union representatives advised her that "they wanted to just deal with the Max right now and that they would deal with the other problems later." Speegle Dep. at 322-324; Def.'s Ex. 36 to Speegle Dep. However, no person at Loparex ever told Speegle that she could not file a grievance with the union concerning sexual harassment. Speegle Dep. at 329.

Speegle's ability to manage her personal affairs during the statutory charge filing period also demonstrates that she was not so mentally incapacitated that equitable tolling should apply. In January or February 2005 Speegle used the internet auction website ebay.com to participate in auctions and she used the website once every couple of weeks. Speegle Dep. at 30-32. Speegle also attended about six antique auctions since December 2004 in connection with her husband's antique store. Speegle Dep. at 52. In May 2005 Speegle took out a loan with Citifinancial. Speegle Dep. at 37-38. She filled out the paper work for the loan, she deposited the check for the loan in her bank account, and she began to make monthly payments on the loan. Speegle Dep. at 38-40. Speegle also made monthly payments on her Home Depot credit card using the Internet. Speegle Dep. at 45. Speegle was able to write checks to Dr. Gordon during her visits. Gordon Dep. at 36. Dr. Gordon never assessed Speegle as being incapable of handling her financial affairs and she accepted payment from Speegle. Gordon Dep. at 35-36.

The court finds that, in light of Speegle's ability to pursue legal rights and her

ability to manage her personal affairs during the EEOC filing period, that Speegle's mental impairments do not amount to the "extraordinary circumstances" required for the court to apply the doctrine of equitable tolling.  This finding is further supported by the evidence showing that Speegle was never declared to be incompetent during the charge filing period, and there is no evidence demonstrating that Dr. Gordon ever declared Speegle to be incompetent during the charge filing period.  Speegle was hospitalized one night during the EEOC filing period, and Dr. Gordon has not recommended that Speegle be hospitalized again.  Gordon Dep. at 42.  Further, Dr. Gordon never thought it was necessary to have Speegle committed to a hospital or institution.  *Id*. at 39-40.  Lastly, Speegle was also evaluated by James F. Hooper, M.D., on May 18, 2005, in connection with her claim for disability benefits.  Pl.'s Ex. 4 to Hooper Dep.  Dr. Hooper noted that Speegle was "logical, goal oriented, and showed no evidence of psychosis, mental retardation or dementia" and that she "appears to have good insight and judgment."  *Id.*  Hooper did not see any signs of incompetency during the EEOC charge time period.  Hooper Dep. at 126-127.

The court finds that although there is evidence to demonstrate that Speegle suffered from a mental condition, her condition did not amount to such "extraordinary circumstances" such that the doctrine of equitable tolling should be applied.  Thus, the court finds that summary judgment is due to be **GRANTED** in favor of Loparex with respect to Speegle's Title VII claim, which shall be done by separate order.

### D. Motion to Strike the Affidavit of Gerald Miller

Loparex has also moved to strike the affidavit of Gerald Miller (doc. 49) which

was submitted by Speegle to support her contention that the court should apply the doctrine of equitable tolling (doc. 47, Ex. A).  Miller is the attorney representing Speegle in this case.  Miller Decl. at ¶ 2.  In her deposition, Speegle testified that she used the LegalMatch website in May or June 2005 to search for an attorney to represent her in this case and that she hired Miller using this website.  Speegle Dep. at 342-344.  Loparex argues that the evidence showing that she identified and located Miller as her attorney in this case in May or June of 2005 demonstrates that she was able to pursue her legal rights during the statutory filing period regardless of any mental impairment.  Def.'s Br. in Supp. of its Mot. For Summ. J. at pp. 28-29.  In his affidavit, Miller contradicts the testimony of his client and states that Speegle used the LegalMatch website on September 29, 2005, to search for an attorney to represent her in this case.  Miller Decl. at ¶ 3.  Assuming that the date Speegle used the LegalMatch website to search for an attorney was September 29, 2005, rather than May or June 2005, the court still finds that the doctrine of equitable tolling should not apply in this case.  Even if Speegle did not hire Miller until September 29, 2005, there is sufficient evidence demonstrating that during the filing period Speegle pursued other legal rights and that she was able to manage her personal affairs such that the doctrine of equitable tolling should not apply.  Therefore, the court finds that Loparex's motion to strike the affidavit of Gerald Miller shall be deemed **MOOT,** which shall be done by separate order.

## II. State-Law Claims

Speegle also alleges various state law claims in her complaint.  Having found

that Speegle's federal claims are due to be dismissed, the court declines to exercise supplemental jurisdiction over Speegle's remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3).   Therefore, Speegle's state law claims shall be **DISMISSED WITHOUT PREJUDICE**, which shall be done by separate order.

   **DONE** and **ORDERED** this the 28th day of March, 2007.

*[signature]*
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE